772 So.2d 7 (2000)
Diana HOLZHAUER-MOSHER, Appellant,
v.
FORD MOTOR COMPANY, Appellee.
No. 2D99-2288.
District Court of Appeal of Florida, Second District.
July 21, 2000.
*8 Scott T. Borders of Clark, Charlton, Martino & Borders, P.A., Tampa, for Appellant.
William L. Bromagen of William L. Bromagen, P.A., Ft. Lauderdale and Robert W. Thielhelm, Jr. and Eric S. Golden of Baker & Hostetler LLP, Orlando, co-counsel for Appellee.
FULMER, Judge.
This appeal involves a challenge to the constitutionality of the Florida Motor Vehicle Warranty Enforcement Act,[1] which is commonly known as the Lemon Law. We find no constitutional infirmity and no error in the final summary judgment entered by the trial court and, therefore, affirm. However, we write to explain how the "full refund" promised in the Act's declaration of legislative intent may turn out to be less than the consumer might expect and to suggest that consumers be given notice of this fact at the time they seek Lemon Law relief.
On October 21, 1997, Diana Holzhauer-Mosher purchased a new 1997 Ford Mustang automobile. The total purchase price of the new vehicle, after a $500 manufacturer's rebate, was $25,716.75. Holzhauer-Mosher traded in a 1995 Isuzu Rodeo and was given a trade-in allowance of $17,043. At the time of the trade-in, Holzhauer-Mosher still owed $16,393.45 on the Isuzu, leaving a total net trade-in allowance of $649.55, which was used toward the purchase of the Mustang. In accordance with the sales/purchase contract, the dealer satisfied the $16,393.45 debt on the Isuzu.
Approximately one month after the purchase, Holzhauer-Mosher first reported a nonconformity in the Mustang. The problem continued. Pursuant to section 681.109, Florida Statutes (1997), Holzhauer-Mosher *9 requested arbitration with the Florida New Motor Vehicle Arbitration Board. In the course of the arbitration, Ford Motor Company stipulated that the vehicle was a "lemon," thereby entitling Holzhauer-Mosher to relief under the Lemon Law. Thus, the only dispute between the parties was the amount of the refund, if any, to which Holzhauer-Mosher was entitled.
In the legislative intent of the Lemon Law, set forth in section 681.101, Florida Statutes (1997), "the Legislature recognizes that a motor vehicle is a major consumer purchase and that a defective motor vehicle undoubtedly creates a hardship for the consumer." Section 681.101 further provides that it is "the intent of the Legislature to provide the statutory procedures whereby a consumer may receive a replacement motor vehicle, or a full refund, for a motor vehicle which cannot be brought into conformity with the warranty provided for in this chapter." However, this statutory remedy does not "limit or expand the rights or remedies which are otherwise available to a consumer under any other law." § 681.101, Fla. Stat. (1997).
In this case, the dispute as to the correct amount of the refund centers on the amount considered to be the purchase price of the "lemon." On October 1, 1997, the definition of "purchase price," contained in section 681.102, was amended to read:
"Purchase price" means the cash price as defined in s. 520.31(1), inclusive of any allowance for a trade-in vehicle, but excludes debt from any other transaction. "Any allowance for a trade-in vehicle" means the net trade-in allowance as reflected in the purchase contract or lease agreement if acceptable to the consumer and manufacturer. If such amount is not acceptable to the consumer and manufacturer, then the trade-in allowance shall be an amount equal to 100 percent of the retail price of the trade-in vehicle as reflected in the NADA Official Used Car Guide (Southeastern Edition) or NADA Recreation Vehicle Appraisal Guide, whichever is applicable, in effect at the time of the trade-in. The manufacturer shall be responsible for providing the applicable NADA book.
§ 681.102(19), Fla. Stat. (1997) (emphasis added).[2] The predecessor provision defined purchase price as "the cash price as defined in s. 520.31(1), inclusive of any allowance for a trade-in vehicle." § 681.102(17), Fla. Stat. (1995).
According to the affidavit of the Regulatory Compliance Manager of the Ford Motor Customer Service Division, the 1997 amendment was the direct result of a Lemon Law Review Workshop held in Tallahassee, Florida, where the auto industry was addressing a concern that it was unfairly absorbing over-allowance on tradeins, as well as negative equity built into the purchase price of new vehicles.
At arbitration, Ford argued that the money Holzhauer-Mosher owed on the trade-in vehicle constituted "debt from any other transaction" which must be excluded from the purchase price, resulting in negative equity for which Holzhauer-Mosher, not Ford, was responsible. Because the net trade-in allowance reflected in the purchase contract for the Mustang was not acceptable to Ford, it exercised its right under section 681.102(19) and argued that the refund should be calculated by using the NADA guide price of the trade-in vehicle which was $14,050. Ford further argued that, as intended by the 1997 amendment, the $16,393.45 debt owed on the *10 trade-in vehicle should be subtracted from the NADA retail price of $14,050, leaving a negative equity of $2,343.45 on the Isuzu.
The Arbitration Board awarded Holzhauer-Mosher a refund of $13,634.66 which it calculated by using the NADA retail price of $14,050 but without deducting the $16,393.45 Holzhauer-Mosher owed on her trade-in vehicle. Ford appealed the Board's decision to the circuit court pursuant to section 681.1095(19), Florida Statutes (1997), which provides for de novo review. Both parties moved for summary judgment. Ford again argued that Holzhauer-Mosher's refund should be calculated by deducting the debt owed on the Isuzu trade-in vehicle ($16,393.45) from the NADA book value of the trade-in ($14,050), leaving a negative equity of $2,343.45. In her motion for summary judgment, Holzhauer-Mosher requested that the trial court affirm the arbitration award or declare the statutory definition of "purchase price" to be unconstitutional.
The trial court concluded that there were no disputed issues of material fact and that Holzhauer-Mosher failed to establish that section 681.102(19) was unconstitutional. A final summary judgment was entered that granted Ford's motion for summary judgment and calculated the refund due Holzhauer-Mosher as follows:

 $14,050.00 NADA retail price for Isuzu
 trade-in vehicle
- 16,393.45 Debt owed on Isuzu at time of
___________ trade
 $-2,343.45 Negative equity in Isuzu tradein
+ $7,231.95 Holzhauer-Mosher's loan
___________ payments on the new Mustang
 $ 4,888.50 Subtotal
 - 3,791.51 Offset for use of new Mustang,
___________ pursuant to section 681.102(20)
 $ 1,096.99 REFUND

On appeal, Holzhauer-Mosher argues that there is a material issue of fact as to whether there was "debt owed on any other transaction." She contends that there was no evidence that debt from any other transaction was included in or added to the purchase price of the Mustang. She reasons that the Isuzu debt was incurred as part of a separate transaction involving the purchase of the Isuzu, that it was not added to the purchase price of the new Mustang, and that only the equity in the Isuzu was subtracted from the purchase price. She therefore asserts that in determining the "purchase price" of the Mustang, the amount owed on the Isuzu should not be considered "debt owed on any other transaction." Although Holzhauer-Mosher couches her argument as a disputed issue of material fact, the determination of whether the Isuzu debt should be excluded from the "purchase price" of the Mustang turns on the statutory construction of "purchase price" in section 681.102(19), which is a question of law. The trial court correctly concluded that there were no issues of material fact and, therefore, did not err in granting summary judgment.
Holzhauer-Mosher further argues that even if the debt owed on the Isuzu should be considered in determining the "purchase price," the debt amount should be subtracted from the trade-in value she negotiated with the dealer, and not the NADA guide value. She contends that if section 681.102(19) is interpreted to mean that the manufacturer may reject the trade-in value she negotiated with the dealer and substitute the NADA guide value therefor, it deprives her of her constitutional right to contract without due process of law, constitutes a price-fixing and damage-fixing statute, and violates the separation of powers doctrine and the right to equal protection.
In Chrysler Corp. v. Pitsirelos, 689 So.2d 1132 (Fla. 4th DCA 1997), quashed on other grounds, 721 So.2d 710 (Fla.1998), the Fourth District considered similar challenges to section 681.1095(14), Florida Statutes (1989), which fixes continuing damages at $25 per day, and construed the Lemon Law to be constitutional as applied. Although the supreme court quashed the Fourth District's opinion on other grounds, it expressly held Florida's Lemon Law to *11 be constitutional. We agree with the Fourth District's reasoning in rejecting the constitutional challenges to the Lemon Law in Pitsirelos, and conclude the same reasoning applies here. Accordingly, we hold that section 681.102(19), Florida Statutes (1997), is constitutional.
Although we find no constitutional impairment, we observe that, at first glance, it appears that Holzhauer-Mosher was shortchanged her "full refund," as promised by the statute, in the amount of $2,993.[3] There is no question that Holzhauer-Mosher did not get the same "deal" from the manufacturer when she returned her "lemon" that she received from the dealer when she purchased it. The amended definition of "purchase price" allows the terms of Holzhauer-Mosher's negotiated purchase contract to be altered in a way that benefits the manufacturer to the detriment of the consumer. However, there is also no question that the dealer gave her a trade-in allowance that exceeded the retail value established by the industry at the time of the trade-in. By placing a higher value on the Isuzu than allowed by the NADA guide, the dealer, in effect, agreed to pay part of the debt owing on the trade-in vehicle and the manufacturer had no opportunity to object. It is just this situation that prompted the manufacturers to urge that the definition of purchase price be amended.
A closer look at this statutorily authorized refund calculation supports a conclusion that the refund awarded to Holzhauer-Mosher satisfies the unambiguous definition of purchase price and carries out the legislative intent of the statute. The Lemon Law was enacted as an alternative remedy for resolving disputes concerning nonconforming automobiles. See Duane A. Daiker, Florida's Motor Vehicle Warranty Enforcement Act: Lemon-Aid For the Consumer, 45 Fla. L.Rev. 253, 263 (1993); Pitsirelos, 689 So.2d at 1134. In declaring its legislative intent, the Legislature was careful to express that "nothing in this chapter shall in any way limit or expand the rights or remedies which are otherwise available to a consumer under any other law." § 681.101, Fla. Stat. (1997). Thus, the statute does not take away any existing rights. See Pitsirelos, 689 So.2d at 1134. Those consumers who choose to seek relief under the Lemon Law receive the benefit of a quick recovery procedure that allows relief through arbitration, without filing a lawsuit, and recovery of attorney's fees and costs.
The Lemon Law already provides that, at the time of purchase, "the dealer shall provide to the consumer a written statement that explains the consumer's rights under [the Lemon Law]." § 681.103(3), Fla. Stat. (1997). The Legislature should consider adding a provision that requires that the written statement also expressly advise consumers that if they elect to seek relief under the Lemon Law, they may not recover the full bargain they negotiated at the time they purchased their "lemon." Consumers should know that the return of a "lemon" to the manufacturer may result in the return to the consumer of any debt owed on a trade-in vehicle that exceeds its NADA value.
On balance, and after considerable study of this statutory remedy, we conclude that the Lemon Law provides a fair and equitable dispute-settlement procedure for both the consumer and the manufacturer, notwithstanding the sour taste it may leave in the mouths of those consumers who utilize a negative equity trade-in vehicle to purchase their "lemon."
Affirmed.
BLUE, A.C.J. and DAVIS, J., Concur.
NOTES
[1] Chapter 681, Fla. Stat. (1997).
[2] Section 520.31(1), Florida Statutes (1997), provides:

"Cash price" means the price at which the seller, in the ordinary course of business, offers to sell for cash the property or service that is the subject of the transaction. At the seller's option, the term "cash price" may include the price of accessories, services related to the sale, service contracts, and taxes. The term "cash price" does not include any finance charge.
[3] $17,043 (dealer allowance on Isuzu) $14,050 (NADA value of Isuzu) = $2,993.